IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

George A. Z. Johnson, Jr., Inc.,                )
          Plaintiff                )
                        )
vs.                                             )
                        )     C.A. No. 2:04-0537-23
Gregory B. Sosebee, individually, and            )     **ORDER**
doing business as Gregory B. Sosebee             )
and Associates,                                  )
          Defendants.                )
_____)

       Plaintiff, George A. Z. Johnson, Jr., Inc. ("Plaintiff"), brought a trademark infringement

action under the Lanham Act, 15 U.S.C.A. § 1114, and under the South Carolina Unfair Trade

Practices Act [UTPA], S.C. Code. Ann. § 39-5-10, *et seq*. against Defendant Gregory B. Sosebee

and Gregory B. Sosebee and Associates ("Defendant") for the unauthorized use of a mark alleged

to be confusingly similar to Plaintiff's registered trademark.  Defendant moves for summary

judgment.  Plaintiff responded and moves for summary judgment as well.  For the reasons stated

herein, the court denies Plaintiff's motion and grants Defendant's motion for summary judgment.

## I. **BACKGROUND**

       The relevant undisputed facts of the case are as follows:

       Plaintiff is a corporation providing land surveying services in the State of South Carolina,

through licensed professional land surveyors.  Plaintiff is headquartered and its employees reside

in Charleston County.  While Plaintiff contends that it solicits work from across South Carolina, it

is undisputed that Plaintiff has not performed surveying work in Oconee, Anderson, Pickens or

Laurens Counties.  (Johnson Depo. at 12-13.)  In 1974, Plaintiff began using the stylized image of

a transit machine ("the Mark"), an instrument used in surveying, to identify its land surveying

services.  Plaintiff has used this Mark continuously since that time.  In 1988, Plaintiff registered the

Mark with the United States Patent and Trademark Office [Registration No. 1,500,878].

Defendant is also a land surveyor in South Carolina. Defendant is headquartered in Oconee County and performs surveying work in Oconee, Anderson, Pickens and Laurens Counties. (Def. Mot. Summ. J. at 2.) In approximately 1991, Defendant observed the Mark on Plaintiff's business card, given to him by one of Plaintiff's employees. Defendant copied the Mark onto his own business card, and also used this Mark to advertise his surveying business in telephone books and to identify his business on plats that he prepared for his clients.

In 1998, Plaintiff contacted Defendant and advised him that the Mark was a registered trademark. Defendant promised to cease all unauthorized use of the Mark. Thereafter, Defendant created a second mark ("the Second Mark") to use on his business cards and on his business equipment. This Second Mark also contains an image of a transit machine, inverted from the image in the Mark, and surrounded by an outline of the state of South Carolina. Plaintiff contends the Second Mark is confusingly similar to the original Mark.

In 2004, Plaintiff sued Defendant to enjoin his use of the Second Mark and sought monetary damages as measured by an accounting of Defendant's profits from 1998 to 2004. At the time Plaintiff filed suit, Defendant voluntarily ceased using the Second Mark and began using a generic depiction of a surveyor gazing through an unidentified device on a tripod. Plaintiff does not object to use of this mark.

## II. <u>STANDARD OF REVIEW</u>

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini*

*Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## <u>ANALYSIS</u>

The Lanham Act prohibits a person from using a registered mark in a way which is likely to confuse the public. 15 U.S.C. §§ 1114(1)(a). "[I]t is not necessary for the owner of the registered trademark to show actual confusion: the test is whether there is likelihood of confusion." *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984). The factors to be considered in determining likelihood of confusion are: (a) the strength or distinctiveness of the mark; (b) the similarity of the two marks; (c) the similarity of the goods or services the marks identify; (d) the similarity of the facilities the two parties use in their businesses; (e) the similarity of the advertising used by the two parties; (f) the defendant's intent; and (g) actual confusion. *Id.* Generally, likelihood of confusion is a question of fact; however, a trial court may conclude, via summary judgment, that there is no need for a jury. *See Thrifty Rent-A-Car Systems, Inc. v. Thrifty Auto*

*Sales of Charleston,* 849 F.Supp. 1091 (D.S.C. 1993).

Defendant argues that summary judgment is appropriate in this case because, due to Plaintiff and Defendant's differing trade territories, there is no likelihood of consumer confusion due to use of similar marks. The landmark case defining territorial rights for a mark registered on the Lanham Act is a 1959 case from the Second Circuit. *See Dawn Donut Co. v. Hart's Food Stores, Inc*., 267 F.2d 358, 121 U.S.P.Q. 430 (2d Cir. 1959). Under the *Dawn Donut* rule, while a senior federal registrant has superior priority, there is no likely confusion for a court to enjoin unless and until the senior user shows a likelihood of entry into the junior user's trade territory. *Id.*

In *Dawn Donut*, the plaintiff was the national senior user of the mark DAWN for doughnut mix. *Id.* The junior user first adopted and used the mark DAWN in 1951 entirely within a six county area of New York surrounding the city of Rochester for selling doughnuts at the retail level. With the exception of one Dawn Donut Shop operated in Rochester thirty years previously, the plaintiff's licensing of its mark in connection with the retail sale of doughnuts in the state of New York had been confined to areas over 60 miles from defendant's trading area. Plaintiff was, at the time of suit, not using the DAWN mark at the retail level in defendant's Rochester trade area. The court held that if the registrant is likely to enter the junior user's area, then there will be the requisite likelihood of confusion, and the junior non-registrant would be enjoined. However, under the facts of that case, the court held that there was no *present likelihood* of plaintiff's entry into the junior user's territory in Rochester, and thus no likelihood of confusion for an injunction to remedy at that time:

> Therefore, if the use of the marks by the registrant and the unauthorized user are confined to geographically separate markets, with no likelihood that the registrant will expand his use into the defendant's market, so that no public confusion is possible, then the registrant is not entitled to enjoin the junior user's use of the mark.

*Id.* at 364. The right that the federal registrant obtains over common law rights is the right to enjoin

the junior user when there is a likelihood of confusion created by a likelihood of entry. 4 J. Thomas

McCarthy, *McCarthy on Trademarks and Unfair Competition* § 26:33 (hereinafter McCarthy).

The Fourth Circuit has adopted the reasoning of *Dawn Donut*. In *Sara Lee,* the Fourth

Circuit explained that a trademark owner "has no obligation to sue," *i.e.,* his right to protection has

not ripened, "until the likelihood of confusion looms large." *Sara Lee Corp. v. Kayser-Roth Corp.,*

81 F.3d 455, 462 (4th Cir. 1996) (internal quotation marks omitted). Although "a senior federal

registrant has superior priority" which extends nationwide, "there is *no likely confusion* for a court

to enjoin unless and until the senior user shows a likelihood of entry into the junior user's trade

territory." *What-A-Burger of Virginia, Inc. v. Whataburger, Inc. of Corpus Christi, Texas* 357 F.3d

441, 451 (4th Cir. 2004) (quoting 4 McCarthy at § 26:33). "[T]he injunctive *remedy* does not ripen

until the registrant shows a *likelihood of entry*" into the territory in question. *Lone Star Steakhouse*

*& Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 932 (4th Cir.1995) (second emphasis added); *see*

*Armand's Subway, Inc. v. Doctor's Assocs., Inc.,* 604 F.2d 849, 849-50 (4th Cir.1979) (explaining

that even though the owner of a registered trade-mark has an exclusive right of use that enjoys

nationwide protection, "the protection is only potential in areas where the registrant in fact does not

do business" and that "[a] competing user could use the mark there until the registrant extended its

business to the area"). In such a scenario, "a likelihood of confusion flows directly from the proof

of likelihood of entry by the registrant." *What-A-Burger,* 357 F.3d at 451 (quoting 4 McCarthy §

26:34).

In this case, Plaintiff argues that a surveying business, unlike the restaurants and doughnut

distribution businesses involved in the cases applying the territorial rights rule, is not a "local"

business such that this "trade territory" analysis is appropriate. (Pl. Reply Memo. at 22.) Plaintiff

analogizes a licensed surveyor to a licensed attorney and argues that, like an attorney, a surveyor

may perform his services equally well anywhere in South Carolina.  Plaintiff correctly notes that the nature of the business, as well as its geographic location and proximity to competing users, is significant in determining whether the public is likely to be confused.  *What-A-Burger*, 357 F.3d at 450, n.7 (asserting that "the nature of the product is significant in determining whether the consuming public is likely to be confused, and geography has a significant impact on this analysis").  As such, Plaintiff maintains that because surveying services are not limited by local markets like the businesses in the cases cited by the Defendant, its trademark protection extends statewide.[1]

The court disagrees with Plaintiff's assertion that land surveying is not a local business.  As referred to by the courts, a "local business" is one that, either due to high transportation costs or access limited to local consumers, serves a limited area.  *See Armand's Subway,* 604 F.2d at 851, n.3 (holding that "individual areas less than statewide" are appropriate measures of trade territory where, as in the manufacture of brick, high transportation costs limit penetration of a wide market); *Spartan Food Systems, Inc. v. HFS Corp.,* 813 F.2d 1279, 1283 (4th Cir. 1987) ("[A]reas less than state wide may be appropriate for local businesses, such as sandwich shops or restaurants. . . .[T]he critical factor, even in a single state, is the likelihood of confusion engendered by competing uses of similar marks rather than state lines").  A business may accurately be deemed non-local if it can perform its services for distant customers with no disadvantage to either customer or business, such that a customer is as likely to select a remote service provider as a nearby one.  Such is obviously not the case for land surveying services.  Surveying services, while portable to a certain degree, are tied to a certain area in the same way other local businesses are.  Land, by nature, is local and immovable.  A surveyor must physically be upon the land in order to perform his service.  As Mr.

---

[1] Many businesses, especially those accessible over the internet, may transcend local boundaries.  In such cases, this court agrees that a traditional *Dawn Donut* analysis would be inappropriate.

Johnson testified, the cost of transporting a surveying crew to a location distant from Charleston County could add significantly to the cost of a project.[2] (Johnson Depo. at 16.)  Because distance from the customer factors significantly in determining the cost of this service, land surveying is a "local" business.  Accordingly, the court, applying the territorial rights rule of *Dawn Donut,* will only recognize trademark protection in those areas that Plaintiff has penetrated or is likely to penetrate.

Defendant argues that Plaintiff has only "penetrated" those areas in which it has actually performed, or sought to perform, surveying services.  The court in *Lone Star Steakhouse*, following the rule of *Dawn Donut*, held that protection as provided by the Lanham Act is "only potential in areas where the registrant **in fact** does not do business."  *Lone Star Steakhouse,* 43 F.3d at 932 (emphasis added).  As such, "[a] competing user could use the mark there until the registrant extended its business to the area."  *Id.*; *see also Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522 (4th Cir. 1984) (holding that since the plaintiff has not "penetrated" the area in which defendant operates, it is not entitled to injunctive relief until it has so "penetrated").  As the case law makes clear, the fact that Plaintiff's license allows him to perform surveying work in all counties of South Carolina does not make all of South Carolina his "trade territory."[3]  Only those places where Plaintiff has worked, or has proven he is likely to work, are his trade territory.

Applying this rule to the facts of this case, Plaintiff's trade territory does not extend into

---

[2] Mr. Johnson testified that his business charges customers for travel time both to and from the job site.  At $95 an hour for the crew, the over 300-mile round-trip drive to Laurens County would add at least $700 to the cost of a job.  (Johnson Depo. at 16.)

[3] In *Dawn Donut*, the plaintiff was a national company that was capable of selling its mix in the defendant's territory; in fact, it did sell its mix in other parts of New York state, but not within 60 miles of the defendant's trade territory.  As such, for plaintiffs who are local businesses, where the plaintiff could possibly do business is not determinative of plaintiff's trade territory.

Defendant's territory. Plaintiff operates, employs, and solicits business from Charleston County. The nearest county in which Defendant has worked is Laurens County, over 170 miles away. It is undisputed that Plaintiff has never performed surveying work in the counties in which Defendant has worked. (Johnson Depo. at 12.) Plaintiff has not alleged that he now intends, or ever intended, to solicit work from Oconee County or surrounding areas. Plaintiff admits that he has never lost a customer or competed for a job with Defendant. (Johnson Depo. at 19.) The court does not attempt to define the exact boundaries of either party's trade territory; however, the court has no difficulty finding that a distance of over 170 miles is far enough to clearly constitute distinct territories serving different consumers. While it is possible for Plaintiff to work in the counties serviced by the Defendant, such a possibility, absent any evidence of intention to do so, does not constitute a "likelihood of entry." Accordingly, and taking the facts in a light most favorable to the Plaintiff, the Plaintiff has failed to show any evidence of penetration into Defendant's trade territory during a time when Defendant used the Second Mark. Absent this penetration, the court has consistently held that no consumer confusion - and thus no infringement - is possible.

Plaintiff urges the court to adopt a presumption of likelihood of confusion based on Defendant's bad intentions, as evidenced by his exactly copying the Mark and then by closely approximating the Mark in the Second Mark. *Osem Foods Indus. v. Sherwood Foods, Inc*, 917 F.2d 161 (4th Cir. 1990); *Shakespeare Co. v. Silstar Corp. of Am.,* 110 F.3d 234 (4th Cir. 1997). In viewing the facts in a light most favorable to Plaintiff, as is proper in considering Defendant's motion for summary judgment, the court assumes that Defendant acted in bad faith and with the intent to confuse consumers in copying the Mark. Even with this assumption, however, Plaintiff's claim cannot succeed. Where competitors do not overlap in trade areas, no amount of copying of marks will substantiate a finding of likelihood of confusion. The Fourth Circuit has held that

"[m]ere use of a mark that is similar *or even identical to a registered trademark* does not *a fortiori* establish infringement." *What-A-Burger,* 357 F.3d at 450 (emphasis added). In the absence of any objective likelihood of confusion, the alleged infringer's intent cannot transmute a lawful act into an unlawful one. *Steak N Shake, Inc. v. Steak & Ale, Inc*., 171 U.S.P.Q.2d 175 (T.T.A.B. 1971) (holding that registration applicant's intent cannot affect its rights if confusion is not likely).

The court's finding of no likelihood of confusion precludes both injunctive relief and any recovery of Defendant's profits. Because there is no likelihood of consumer confusion, no infringement has taken place; where there is no infringement, there can be no recovery.[4]

**State Law Claims**

The standard for liability for trademark infringement under the South Carolina Unfair Trade Practices Act [UTPA], like that of the Lanham Act, is likelihood of consumer confusion. S. C. Code Ann. § 39-5-20; *see also Taylor v. Hoppin' Johns, Inc.* 304 S.C. 471, 477, 405 S.E.2d 410, 413 (S.C. App. 1991) (holding that likelihood of confusion has been found to exist in trademark cases under state law "when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark"); *Global Protection Corp. v. Halbersberg* 332 S.C. 149, 156, 503 S.E.2d 483, 487 (S.C. App.

---

[4] The court further notes that, even if Plaintiff had penetrated Defendant's trade territory at a time when Defendant used either the Mark or the Second Mark, it is not apparent that the court could offer any current relief. A request for injunctive relief is moot because Defendant discontinued use of the Second Mark in 2004. Further, courts rarely award an accounting of Defendant's profits for trademark infringement absent evidence of actual consumer confusion or lost profits, neither of which Plaintiff has alleged in this case. *See G. H. Mumm Champagne v. Eastern Wine Corp.,* 142 F.2d 499, 501, 61 U.S.P.Q. 337 (2d Cir. 1944), cert. denied, 323 U.S. 715 (1944) ("It is of course true that to recover damages or profits, whether for infringement of a trademark or for unfair competition, it is necessary to show that buyers, who wished to buy the plaintiff's goods, have been actually misled into buying the defendant's."); *see also* 5 McCarthy § 30:63.

1998)("To be actionable under the UTPA, the unfair or deceptive act or practice must have an impact upon the public interest [and must] have the potential for repetition.") (quoting *York v. Conway Ford, Inc.,* 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997)).  Because the court finds that there is no likelihood of consumer confusion due to lack of overlapping trade territories, the court also grants Defendant's motion for summary judgment as to Plaintiff's South Carolina Unfair Trade Practices claim.

**Attorney's Fees**

Defendant asserts that it is entitled to an award of attorney's fees under § 35 of the Lanham Act which states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  In the Fourth Circuit, a prevailing defendant need not prove bad faith on the part of the plaintiff to prove that such an "exceptional circumstance" is at hand.  *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 22 U.S.P.Q.2d 1050, 1055 (4th Cir. 1992) ("[W]e believe that a finding of bad faith is not necessary for a prevailing defendant to proven an 'exceptional' cases under § 35(a) of the Lanham Act.").  Despite this lower standard for prevailing defendants, the court finds no exceptional circumstances meriting an award of attorney fees in this case.  As such, the court declines to award attorney's fees to Defendant.

**<u>CONCLUSION</u>**

For the aforementioned reasons, the court finds that, as a matter of law, the Plaintiff cannot prove its case.  It is, therefore, **ORDERED**, for the foregoing reasons, that the Defendant's Motion for Summary Judgment is **GRANTED,** and the case is dismissed.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**September 28, 2005**